A97A1134. IN THE INTEREST OF A. H. et al., children.
(486 SE2d 412)

ELDRIDGE, Judge.

The appellant, Kristianna Talley, appeals from an order of the juvenile court terminating her parental rights to her son, A. H., born November 7, 1994, and her two daughters, K. J. F., born January 7, 1986, and S. A. L. F., born November 26, 1987.[1] For the reasons which follow, we affirm.

"Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is 'clear and convincing evidence of parental misconduct or inability.' For purposes of this case, a finding of 'parental misconduct or inability' must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If the first prong of the test is met, the trial court then considers whether the termination of parental rights is in the child's best interests." *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

"The question on appeal is whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citations and punctuation omitted.) Id.

Viewed in this light, the evidence showed that all three children have spent the majority of their lives in foster care. A. H., who is two years of age, has spent all but four weeks of his life in foster care, and K. J. F. and S. A. L. F., who are respectively ten and nine years of age, have spent over five and one-half years in foster care.

K. J. F. and S. A. L. F. first came into the control of the Georgia

---

[1] The parental rights of the putative fathers of these three children were also terminated, but they have not appealed.

Department of Family & Children Services ("DFCS") on September 19, 1988, when their parents voluntarily requested a foster home placement for the girls through DeKalb County DFCS, as they were not able to provide for their daily care and supervision, or medical needs. K. J. F. is a special needs child with a chromosomal abnormality, cerebral palsy, and mild retardation.

Between October 14, 1988, when the initial 30 day case plan was implemented, and June 17, 1991, numerous case plans were developed to help implement reunification between the appellant and her daughters. However, the appellant was unable to comply with all the goals set forth in the case plans. Specifically, she was not able to provide necessary daily care and supervision of the children; she was not able to provide for the specialized physical and emotional needs of the children; and she failed to provide any financial support for the children. For these reasons, several orders were entered extending custody with DeKalb County DFCS. The final order extended custody until October 20, 1988.

On June 17, 1991, a supplemental order of disposition was entered in accordance with OCGA § 15-11-41 (d) and (e). The supplemental order was dated May 31, 1991, and incorporated a Citizens Review Panel report from March 12, 1991. Based on the fact that the children had been in foster care for two and one-half years, one of the recommendations of the Citizens Review Panel was to review the appellant's progress for the next six months and, if she was unable to comply with the case plan goals, to look for alternative permanent placement for K. J. F. and S. A. L. F. Finally, after the children had spent three and one-half years in foster care, the appellant was able to sufficiently comply with the case plan goals, and K. J. F. and S. A. L. F. were returned to her custody on April 25, 1992.

Gwinnett County DFCS first became involved with the appellant, K. J. F. and S. A. L. F. in March 1994, when DFCS received a CPS complaint which alleged that the children were neglected. At that time, the appellant, K. J. F., and S. A. L. F. were living with the appellant's mother.

On November 7, 1994, Gwinnett County DFCS received a second referral on the appellant. The appellant had just given birth to a third child, A. H. At the time of birth, both A. H. and the appellant tested positive for marijuana. A. H. was placed in the custody of the Gwinnett County DFCS on November 9, 1994, three days after his birth. On November 29, 1994, the juvenile court entered a final order finding that A. H. was deprived but returned A. H. to the appellant with conditions and under DFCS supervision. Such deprivation order was not appealed.

All three children came into the custody of Gwinnett County DFCS on December 12, 1994, when the maternal grandmother of the

children turned the children over to DFCS after the appellant was arrested on a charge of possession of marijuana.[2] An emergency deprivation hearing was held on December 15, 1994; the appellant waived presentation of evidence and consented to all three children being placed in the temporary legal custody of DFCS. An order was entered of record on December 28, 1994. The Juvenile Court of Gwinnett County entered a final order on January 9, 1995, dated January 6, 1995, which found that all three children were deprived. This final order was not appealed. All three children have remained in the physical custody of DFCS since December 12, 1994.

Between January 6, 1995, and May 30, 1996, numerous case plans were created and review hearings held. In June 1995, the appellant requested a review hearing under OCGA § 15-11-41 (c) for a more detailed case plan. The juvenile court conducted a review hearing and entered an order on June 26, 1995, which enumerated a more specific case plan for the appellant. In order to comply with the goals set forth, the appellant was to maintain stable housing independent from her mother because of the strained relationship between the appellant and her mother. The appellant was never able to obtain this goal, except for a period of about two months after her marriage. Further, such order required the appellant to complete sleep apnea monitor training, which she failed to do until the court found that such training was unnecessary because A. H. no longer needed the monitor. The appellant was also required to remain alcohol and drug free, to submit to monthly drug screens within 24 hours notice from DFCS, and to attend a weekly AA/NA aftercare support group. The appellant failed to submit to many of the requested drug screens or to obtain verification of them, and never submitted verification of her attendance at weekly AA/NA meetings to the satisfaction of her caseworker. The appellant was further ordered to maintain stable employment to support her children. The appellant testified that she had been employed almost constantly during the time her children were in custody of Gwinnett County DFCS and obtained a job at the Waffle House approximately eight months prior to the hearing terminating her parental rights; however, she never paid any of the court-ordered child support. At trial, the appellant stated both that she could not afford to pay the child support and that she did not feel that she should have to pay any support in that the oldest child received social security benefits which DFCS had been receiving since May 1995.

On September 29, 1995, the court ordered the appellant to meet

---

[2] On May 31, 1995, the appellant was convicted on this charge of possession of marijuana and received a probated sentence of 12 months, as well as a fine of $400 and a monthly probation fee of $25.

with A. H.'s speech and occupational physical therapists so that she could be instructed in the type of therapy he required. However, the caseworkers at DFCS testified that the appellant did not attend any sessions; the appellant testified that she attended only one session. At trial, the appellant testified that she had received A. H.'s therapy schedule, but that neither she nor her husband had an automobile, that her driver's license had been suspended, and that she did not have transportation available to her so that she could attend the sessions.

The Citizens Review Panel met on December 12, 1995, and recommended that DFCS file a petition to terminate parental rights to all three children because the appellant had still not complied with the terms of the case plans and juvenile court orders. On February 26, 1996, the juvenile court conducted a contempt hearing against the appellant and entered an order on March 4, 1996, which reintegrated the previously set forth reunification goals and provided that if the appellant failed to comply with the terms and conditions of the contempt order, DFCS should pursue termination of her parental rights.

On May 30, 1996, the juvenile court entered an extension order, finding that the appellant had wilfully failed and refused to comply with the case plan and to meet the goals of reunification. The court further found that despite numerous very specific orders of the court, contempt actions, insistence by DFCS, and many opportunities, the appellant had wilfully failed and refused to comply with the case plan and to meet the goal of reunification. Specifically, the appellant had not: (a) participated in A. H.'s therapy; (b) provided her work schedule to petitioner to verify her excuses and her alleged stable employment; (c) submitted to required drug screens; (d) corrected her tardiness and participation in visitation; (e) attended her court-ordered psychological evaluation and treatment; (f) paid child support as ordered or shown any ability to support and care for the children. The juvenile court found that the best interests of the children would be served by extending DFCS custody until May 29, 1998. Because the appellant had missed one visitation and had been consistently late for numerous other visitations with the children, the order further limited visitation to once a month and provided that if the appellant was not present at the beginning of time for visitation, no visitation would occur. Further, the foster parents had complained that the appellant was waiting in the parking lot or down the street after visitation, and because of the foster parents' fear of being followed, the order directed the appellant to leave the premises of DFCS immediately after visitation.

The juvenile court on June 26, 1995, on March 4, 1996, and on May 30, 1996, ordered the appellant to submit to a psychological

evaluation. The appellant did not obtain such evaluation until October 2, 1996, the day before a scheduled contempt hearing based on her failure to obtain such evaluation. On July 29, 1996, DFCS filed a petition to terminate the parental rights of the appellant and the children's putative fathers.

1. In two enumerations of error, the appellant asserts that the State did not prove by clear and convincing evidence that the causes and conditions of deprivation would not likely be remedied and that the deprivation would cause serious harm to the children.

There is sufficient evidence to meet the criteria for determining whether a parent's rights should be terminated. However, since the appellant does not allege any error in the juvenile court's order holding that the children were deprived and that the cause of the deprivation was the lack of proper parental control, we will not address these issues, but will only address the issues raised, which are the third and fourth criteria of the first prong of the test in determining whether there is "clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a).

(a) In determining whether the third criterion has been satisfied, "[a]lthough past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation and punctuation omitted.) *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995).

In the case sub judice, the juvenile court heard a great deal of uncontroverted testimony regarding the appellant's past and present relationship to and interaction with the children, as well as the appellant's long history with the Gwinnett County DFCS since 1994 and with DeKalb County DFCS from 1988 until April 1992. S. A. L. F. and K. J. F. remained in the custody of DeKalb County DFCS and in foster care placement for three and one-half years while the appellant attempted to comply with the requirements of her reunification case plans, which included many of the same goals as the case plans and court orders in the case sub judice. The appellant only managed to complete these goals after the juvenile court held that if the appellant was unable to make progress toward reunification, alternative permanent placement should be sought for K. J. F. and S. A. L. F.

When A. H., K. J. F., and S. A. L. F. were removed from the appellant's custody by Gwinnett County DFCS in December 1994, the appellant failed to rectify her situation and demonstrate that she could exercise proper care and control of the children. For nearly two years, the appellant failed to comply with DFCS reunification case plans and the juvenile court's orders. During that time, the appellant was never able to establish independent, stable housing away from

the maternal grandmother; failed to attend A. H.'s physical therapy sessions; never obtained sleep apnea monitor training for A. H.; never provided confirmation of her attendance at AA/NA meetings to her caseworker's satisfaction; did not comply with the terms and conditions of her probation on criminal drug charges; and never paid any court-ordered child support. Further, the appellant did not comply with visitation as set forth in the case plan. Unsupervised visitation with K. J. F. and S. A. L. F. had to be terminated, because at the end of one visitation the caseworker was unable to locate the appellant and the children. Also, the appellant was consistently late for supervised visitation.

Both of the appellant's caseworkers testified that the appellant was uncooperative, very hostile, and resistant toward intervention. Moreover, Dr. Runo, the psychologist who evaluated the appellant, determined that she had a history of problems with drugs and alcohol; that she has the psychological profile of a substance abuser; and that she is prone to erratic behavior and significant mood swings because she suffers from a mood disorder and a personality disorder, both of which would affect her ability to parent and which would be difficult to treat. Dr. Runo further testified that successful treatment of the disorders would be very unlikely if the appellant continued to deny that she has a problem, and that successful treatment would require more than just the appellant's attendance at sessions and would require a bona fide effort on her part to cooperate. Dr. Runo went on to testify that the appellant often felt easily overwhelmed by the demands placed upon her by her children, even though they were not in her custody, and that he felt that the appellant lacked insight and was more likely to indulge her own needs, possibly at the expense of others.

Although the appellant contends she is willing to try and rectify any parenting concerns, and that she should be given the opportunity to follow through with treatment by Dr. Runo prior to the termination of parental rights, "judging the credibility of her good intentions was a task for the juvenile court. The decision as to [the children's] future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) *In the Interest of R. N.*, supra at 205. Further, this Court has held that "[t]he trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court. [Cit.]" *In the Interest of J. R.*, 201 Ga. App. 199, 200 (410 SE2d 458) (1991).

Thus, based on the appellant's past behavior, her untreated psychological difficulties, the length of time her problems have existed, and the evidence of the appellant's current actions toward the children, the evidence supports a finding that the children's deprivation is likely to continue.

(b) It is also evident from the evidence that the deprivations these children have suffered is likely to cause physical, mental, emotional, or moral harm to the children. All three children have special needs. S. A. L. F. has required individual counseling to help her adjust to living in foster care and to assist her with concerns about her future. K. J. F. is mentally retarded, has a chromosomal abnormality, and has a limp, as well as mild cerebral palsy for which she receives therapy and S.S.I. benefits. A. H. was diagnosed as developmentally delayed and has a host of medical problems which require intensive treatment and therapy.

The children's foster parents testified that the appellant's visits with the children caused A. H. to become "over-stimulated"; caused S. A. L. F. to experience diarrhea, vomiting, nightmares, and stomachaches; and caused K. J. F. to have to be "re-potty trained," to suck her thumb, and to pick her nose until it bled. In addition, Dr. Alexander, S. A. L. F.'s psychologist, related that the appellant's visits were very stressful for S. A. L. F. and that S. A. L. F. exhibited regressive behaviors after visits with the appellant, including baby talk, putting her fingers and thumb in her mouth, and becoming very shy and withdrawn.

The children have not established a bond with the appellant due to the lengthy time they have been in foster care; they separate easily from the appellant after visitation. Unless some permanency is introduced into their lives, they will become subject to "foster-drift." Dr. Alexander testified as to S. A. L. F.'s need for permanency, her need to be able to bond with a family, and her desire to be adopted into her foster family. The need for permanency in the lives of these children is enhanced by their special care needs that have been set forth previously.

S. A. L. F. and A. H. are in the same foster home, and their foster parents have indicated that they would be willing to adopt both children. Further, the foster family has shown a willingness to meet the special needs of both of these children. K. J. F. is in a separate foster home, and while her foster parents are not willing to adopt her, DFCS has been contacted by a family with whom K. J. F. has established a relationship and who have expressed an interest in adopting K. J. F., if she were to become available for adoption.

The appellant has not raised as error the juvenile court's finding on the second prong of the test, i.e., whether the termination of parental rights is in the children's best interest. Therefore, this Court will not address this issue.

Accordingly, DFCS presented more than sufficient evidence at the termination hearing below to establish that the appellant's parental rights to these children should be terminated.

2. Appellee's motion to dismiss this appeal is denied.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concurs in judgment only.*

DECIDED APRIL 28, 1997.

Before Judge Elbaz.

Anne M. Couch, for appellant.

Michael J. Bowers, Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Kathryn C. Reeder, Karen S. Davenport, Edgar J. Perkerson III, for appellee.