A98A0508. IN THE INTEREST OF J. B. A. et al., children.
(501 SE2d 862)

BLACKBURN, Judge.

Appellant, the biological mother[1] of J. B. A. and V. C. C., appeals

---

[1] The rights of the biological father of V. C. C. and the biological father of J. B. A. were

the juvenile court's termination of her parental rights, contending the evidence was insufficient to support the termination. We disagree and affirm.

On appeal, this Court must determine "whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. . . . This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Punctuation omitted.) *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

The juvenile court employs a two-prong test in resolving parental rights cases. The court must first decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). Parental misconduct or inability may be proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If this first prong of the test is satisfied, the juvenile court must then determine whether termination of parental rights would be in the best interest of the child "after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81 (a); *In the Interest of A. T.*, 187 Ga. App. 299, 301 (370 SE2d 48) (1988).

In this case, the evidence was sufficient under the standard set forth above to show parental inability and misconduct. Appellant admitted during the termination hearing that she will "always be a drug addict and alcoholic until the day [she] die[s]." It was this addiction which led to appellant's first encounter with the Department of Family & Children Services (DFACS).

On July 2, 1994, appellant was arrested and charged with driving under the influence, habitual impaired driving, two counts of violating Georgia's controlled substances act, and child endangerment. At 2:00 a.m., a sheriff's deputy observed the appellant nearly hit a motorcyclist when she tried to make a U-turn on Interstate 75. When the deputy turned on his siren and emergency lights, the appellant stopped her car momentarily in a lane of traffic instead of pulling to

not adjudicated in this case because the Department of Family & Children Services has not yet been able to identify the fathers from the list of possible putative fathers provided by the appellant.

the side of the freeway, narrowly escaping a collision with an eighteen-wheel truck. She then continued erratically down the freeway, causing other cars to swerve violently to avoid her. The appellant finally stopped her car in the center lane of the interstate, where she got out of her car. After some coaxing by the deputy, appellant managed to get her car to the roadside. However, she continued to walk into traffic, hallucinating on a mixture of drugs and alcohol. Both children experienced these events and watched their mother's arrest from the car. At the time of this arrest, appellant was on probation for numerous convictions, including habitual violator, fleeing and eluding, DUI, no driver's license or insurance, criminal trespass, and possession of controlled substances.

DFACS filed deprivation complaints based on this incident. The juvenile court found both children deprived on August 10, 1994. Those deprivation orders were not appealed. While appellant was jailed following her conviction for the July 2, 1994 offenses, DFACS developed a reunification plan. When appellant was released from prison in December 1994, she began, after some initial difficulty, to comply with the plan. Appellant had supervised visitation with V. C. C. and cared for J. B. A. four days a week. However, she failed to pay any child support. Within a month of her written request for unsupervised visitation with V. C. C., appellant was arrested for driving without a license, a probation violation. She was convicted and sentenced to 30 days in jail. Following her release, she began complying with some of the case plan goals. When the deprivation orders expired in January 1996, appellant immediately regained custody of both children, but did not pick up J. B. A. from his grandmother's house until July 1996. As soon as appellant regained custody, she ceased attending parenting classes and counseling sessions.

In October 1996, appellant was arrested for violating her probation. She tested positive for marijuana. Based on this incident and other complaints involving the neglect of the children, DFACS filed deprivation petitions. During the hearing, the appellant admitted to a caseworker that she would need between three and four years before she would be ready to care for her children. The juvenile court again found both children deprived and awarded temporary custody to DFACS. On November 26, 1996, the juvenile court entered an order finding that reunification was not appropriate. The appellant did not appeal this order or the previous deprivation orders. A month later, appellant left the diversion center to which she had been sentenced for violating her probation and failed to return. Appellant pleaded guilty to felony escape charges and two years of her probation was revoked. On January 13, 1997, DFACS filed a petition to terminate appellant's parental rights.

At the termination hearing held on March 6, 1997, DFACS called

as a witness the psychologist who evaluated appellant on January 20, 1995 and again on October 16, 1996. The psychologist testified that appellant had a long history of abusing drugs, including marijuana, cocaine, LSD, amphetamines, and alcohol, and had hallucinated prior to her July 2, 1994 arrest. In fact, when appellant gave birth to V. C. C., the child tested positive for both marijuana and amphetamines. The psychologist concluded that appellant's diagnosed polysubstance dependence was beginning to cause neurological and other health problems. Appellant was also diagnosed with a borderline personality disorder. She would typically put her needs before those of others, regardless of the consequences. Although the psychologist believed it possible for appellant to change her behavior for brief periods of time in order to regain custody, he concluded that appellant was not capable of being an adequate parent and, in fact, posed a danger to the children.

Upon the appellant's motion, the trial court continued the hearing so that an independent psychological evaluation could be performed. The psychologist who performed this third evaluation on March 14, 1996, also recounted appellant's history of drug and alcohol abuse, noting that she continued to use marijuana. He opined that any remission in her drug use was "forced" because of her incarceration. Further, during his joint session with V. C. C. and appellant, the psychologist noted "it was immediately evident that the child was frightened of her mother." In fact, V. C. C. "turned pale" when her mother entered the room. After a brief visit, V. C. C. insisted that she had to "go bye-bye" and was eventually allowed to leave the room. V. C. C.'s foster parent also noticed that V. C. C. was traumatized by her brief stay in appellant's custody. J. B. A. interacted better with his mother. However, the psychologist noted that appellant behaved like a playmate and not a parent. He was required to intervene in their play to discipline J. B. A., who had begun kicking the walls. Based on his clinical tests and observations, the psychologist concluded that appellant was an extremely superficial, opportunistic and amoral "thrill seeker" who would not benefit from her incarceration. She was very likely to violate the law and to abuse alcohol and drugs in the future. Further, he opined that continued therapy was not an option. In fact, the psychologist stated that "the only real cure for her problems is growing old." Consequently, he recommended that her parental rights be terminated.

Appellant's caseworkers gave testimony consistent with that of the psychologists. They said appellant was impulsive and behaved like a teenager. They noted that appellant changed boyfriends frequently and inexplicably. A DFACS case manager testified that appellant could not maintain stable housing for long and was difficult to keep track of. She also recounted how J. B. A. was traumatized

by his mother's arrest and how both children were stressed by the lack of stability at home.

Appellant does not contest that the children were deprived and that the deprivation was caused by a lack of proper parental control. Therefore, we will not address the court's findings regarding these first two criteria of the first prong of the termination test. Appellant argues that the court erred in determining that appellant's substance abuse — the primary cause of the children's deprivation — was likely to continue and cause the children harm. Appellant argues that DFACS should be helping appellant "put her life in order," rather than terminating her parental rights. Based on the evidence, we cannot agree.

The appellant testified that she would remain an addict until her death. Two licensed psychologists diagnosed appellant with a borderline personality disorder and polysubstance dependence. They concluded that appellant's prognosis for change was poor and that any remission in her substance abuse was forced. Further, appellant's past conduct was relevant in considering whether the conditions of deprivation were likely to continue. *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995). Though appellant was previously jailed for her drug use and drunken driving, she continued that behavior undeterred on the night of July 2, 1994, exposing her children to a serious risk of injury or death. Even after this incident, appellant continued to violate the law, driving without a license and using marijuana. Also, when appellant was given an opportunity to participate in a diversion program, she abused the privilege and escaped. She has proven by her own behavior that her substance abuse cannot be voluntarily remedied and will thus continue. See *In the Interest of A. H.*, 226 Ga. App. 279, 283 (1) (a) (486 SE2d 412) (1997).

Given the appellant's inability to control her drug use and the associated behavioral problems, the trial court properly concluded that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children. Appellant already vividly demonstrated how her hallucinations and drunken driving can threaten the lives of her children. Her erratic and unstable behavior has also emotionally traumatized both children, especially V. C. C., who remains terrified of her mother. Also, appellant's addiction frequently results in her incarceration. While appellant is jailed, the children are forced into temporary foster care. The trial court was authorized to consider the detrimental effects of repeated and prolonged foster care on the children. See *In re G. M. N. & D. M. N.*, 183 Ga. App. 458, 461 (1) (359 SE2d 217) (1987). Clear and convincing evidence amply satisfied the first prong of the termination test. See *In the Interest of A. H.*, supra at 285 (1) (b).

With respect to the second prong of the test, the trial court did not err in finding that termination was in the best interest of the children. "[T]he same factors that support the finding of parental misconduct or inability can also support a finding that termination is in the children's best interest. . . . Our review of the record shows that clear and convincing evidence existed to support the juvenile court's finding in this regard." *In the Interest of R. L. M.*, 221 Ga. App. 343, 345 (2) (471 SE2d 245) (1996).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 23, 1998.

*Kelley A. Dial,* for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Velma C. Tilley,* for appellees.