519 S.E.2d 37 (1999)
238 Ga. App. 393
In the Interest of C.D.P., a child.
No. A99A0503.
Court of Appeals of Georgia.
June 2, 1999.
*38 Hassett, Cohen & Goldstein, Daniel S. Glickman, Atlanta, for appellants.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, P. Brian Campbell, James W. Blount, for appellee.
ANDREWS, Judge.
Vanita Michelle Drumwright and Michael Charles Parker appeal from the judgment of the juvenile court terminating their parental rights to C.D.P., age six at the time of the termination. Their sole contention is that there was insufficient evidence before the court to establish by clear and convincing evidence that their lack of proper parental care and control was likely to continue or would not likely be remedied, as required by OCGA § 15-11-81(b)(4)(A)(iii).
On appeal, this Court determines only whether, after viewing the evidence in a light most favorable to the lower court's judgment, any rational trier of fact could have found by clear and convincing evidence that the parents' rights to custody have been lost. "This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met. [Cit.]" In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
So viewed, the evidence was that, when C.D.P. was born in December 1991, he had cocaine in his system due to Drumwright's drug abuse. He was placed in the custody of the Department of Family & Children Services at that time. Although Parker was involved with Drumwright, had another child with her, and did legitimate C.D.P., he denied at the termination hearing that he was, in fact, the biological father of C.D.P. He had previously attempted to revoke his legitimation of the child.
Drumwright was incarcerated when C.D.P. was six months old, and C.D.P. was placed in a foster home for a period of time. Then, Parker took the child and cared for him until he was injured in an accident. He contacted the Department, told them he was unable to care for the child and did not know the whereabouts of Drumwright. C.D.P. was found to be deprived in June 1993 and again placed in foster care. In February 1995, C.D.P. was placed with his maternal grandmother for over a year. The Department removed C.D.P. from the grandmother's care in July 1996 because she was frequently extremely intoxicated and C.D.P. was not being cared for. He had developed ringworm and a bacterial infection due to his surroundings. He was returned to his previous foster family.
In December 1996, the commitment order regarding C.D.P. was extended, with Drumwright's stipulation to the extension. Shortly thereafter, Drumwright was again incarcerated for nine months. Although she got out of jail in March or April 1998, she did not contact Pickney, C.D.P.'s caseworker for almost a month after her release.
From January 1995 until July 1998, Drumwright had at most five visits with C.D.P., according to the caseworker. At least two of these visits were within the month before the termination hearing. Neither she nor Parker paid any child support. C.D.P. gave no indication of having bonded with either parent and, in fact, did not appear to know who Parker was. C.D.P. is very close to his foster parents, who wish to adopt him, and there is a good bond between him and them.
The caseworker made a home study of Drumwright's residence in September 1997, finding it dirty, cluttered, and unsafe. He described it as "just in shambles." Although Drumwright's three older children reside with her and have not been removed by the Department, they were the subject of a child protective services case assigned to a separate caseworker. That caseworker testified that he had not filed petitions on these children because two of them resided either with Parker or the grandmother at various times. He stated that if all of the children were to attempt to reside with Drumwright in the one room in a five-bedroom home she shared with numerous other relatives, he would be *39 concerned about the health conditions there and whether the children would be properly cared for.
While Drumwright acknowledged her prior drug addiction, her inattentiveness to C.D.P., and that he had been deprived most of his life, she contended that she had straightened her life out, gotten a job as a freight handler, and had completed a parenting class.
"Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Punctuation omitted.) In the Interest of A.M.B., 219 Ga.App. 133, 134, 464 S.E.2d 253 (1995).
In the Interest of R.N., supra at 204(1)(c), 480 S.E.2d 243.
Here, although some improvement in Drumwright's drug addiction and employment status had occurred, that alone does not constitute conclusive evidence of parental fitness in light of the family's history. In the Interest of J.S., 232 Ga.App. 876, 879, 502 S.E.2d 788 (1998); In the Interest of M.L., 227 Ga.App. 114, 117(1), 488 S.E.2d 702 (1997).
"[J]udging the credibility of her good intentions was a task for the juvenile court. The decision as to [a child's] future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) In the Interest of R.N., supra at 205, 480 S.E.2d 243. Further, this Court has held that "(t)he trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court. (Cit.)"
In the Interest of J.R., 201 Ga.App. 199, 200, 410 S.E.2d 458 (1991).
In the Interest of A.H., 226 Ga.App. 279, 284(1), 486 S.E.2d 412 (1997).
Here, the juvenile court was authorized to infer from the evidence of past conduct that the improvements in Drumwright's situation were not sufficient to justify maintaining C.D.P. in foster care limbo in hopes that Drumwright could achieve stability and provide an adequate home for her child. In the Interest of J.M.C., 201 Ga.App. 173, 175, 410 S.E.2d 368 (1991).
There was no error in terminating the rights of Drumwright and Parker.
Judgment affirmed.
McMURRAY, P.J., and RUFFIN, J., concur.