524 S.E.2d 740 (1999)
241 Ga. App. 464
In the Interest of J.L.T. et al., children.
No. A99A0795.
Court of Appeals of Georgia.
November 4, 1999.
Reconsideration Denied December 15, 1999.
*741 William D. Patten, Jr., Stockbridge, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Ernest D. Blount, Stockbridge, for appellee.
RUFFIN, Judge.
The natural mother of J.L.T., S.M.T., and J.M.T. appeals an order of the trial court terminating her parental rights, arguing that the evidence was insufficient to support the termination and that the trial court erroneously admitted hearsay evidence. These contentions are without merit, and we affirm.
On January 26, 1995, appellant's three minor children were taken into temporary custody of the Henry County Department of Family & Children Services (DFCS) pursuant to a consent order. The petition for custody alleged domestic violence and drug and alcohol use by the children's parents. On February 2, 1995, a consent order was entered stipulating that the children were deprived.[1] Over the next three and a half years, the mother and father were subject to seven separate court-approved reunification case plans. Each of these case plans identified several goals and prescribed specific steps to be taken to meet these goals. In June 1998, DFCS filed a petition to terminate both parents' parental rights, alleging that they had failed to comply with the case plans. The father executed a voluntary surrender of his parental rights. A hearing on the termination petition was held on July 20 and August 24, 1998. On November 9, 1998, the trial court issued an order terminating both parents' parental rights.
The first case plan covered the period from February until July 1995. Appellant complied with the plan provisions requiring her to use nonphysical forms of discipline, keep her home clean, and attend a parenting class, but violated a provision requiring her to refrain from making negative comments to the children about DFCS. During the period when the first case plan was in effect, appellant missed two of ten scheduled visits with the children.
The second case plan was in effect from July 24, 1995 until January 1996. This plan required the parents to remain free of alcohol and narcotics. As a step to achieve this goal, the plan required both parents to submit to random drug tests, but DFCS did not ask appellant to submit to any such tests during the plan period. A second goal stated *742 in the plan was that both parents would accept responsibility for their actions. With respect to this goal, appellant failed to attend individual counseling sessions as required by the plan. A third goal set forth in the plan was that the family would deal with the issues that led to the children being placed with DFCS. To achieve this goal, the plan required the parents and children to attend family counseling sessions scheduled by DFCS. However, DFCS did not in fact schedule any such counseling sessions during the second plan period. Two other plan goals related to securing financial support for the family and providing for the children's financial needs. To achieve these goals, the plan required the parents to apply for Supplemental Security Income (SSI) benefits and to pay $75 per month child support to DFCS. Neither of these provisions was satisfied. A final goal was that the family maintain a bond, and to achieve this goal the plan required the parents to visit with their children. Appellant apparently did not miss any scheduled visits during the plan period.
A third case plan was in effect from January through July 1996. One of the conditions in this case plan was that appellant submit to at least one random drug screen per month. This condition was included based upon a recommendation in the mother's psychological evaluation. Although DFCS on four occasions requested that appellant submit to a drug test, she refused to do so. The case plan also required appellant to keep in contact with her children through supervised visitation. With respect to the two daughters, J.L.T. and S.M.T., appellant attended only eight of twenty-five scheduled visits. With respect to the son, J.M.T., appellant attended only ten of twenty-one scheduled visits. On most occasions, appellant failed to contact DFCS 24 hours ahead of time to cancel a scheduled visit, as required by the case plan. According to Elizabeth Vineyard, the DFCS caseworker, the children became very upset when their parents would not show up for scheduled visits. A third goal of the case plan was that appellant demonstrate emotional and mental stability. To achieve this goal, appellant was required to attend counseling sessions with a DFCS-approved psychologist. Although the plan required such sessions to begin no later than January 31, appellant did not start counseling until May 16, 1996. She attended six counseling sessions from May through July. With respect to financial goals, the plan required the parents to pay $75 per month child support to DFCS and to either apply for SSI benefits or obtain full-time employment. Appellant did not satisfy either of these requirements.
A fourth case plan was in effect from July 1996 through January 1997. This plan required appellant to submit to one random drug screen per month upon DFCS' request. Vineyard testified that she asked appellant to take a drug test on three separate occasions, and appellant refused each time. However, Vineyard testified that appellant did take three drug tests through Henry County Counseling Center during the plan period, and that she was provided with the test results, which were negative. A second case plan goal was that the children have contact with their parents. To achieve this goal, the parents were to attend scheduled visitation sessions with their children and were required to notify DFCS 24 hours in advance if they needed to cancel a session. Appellant missed eleven of twenty-seven scheduled visits with her two daughters and four of nine scheduled visits with her son. Again, appellant did not comply with the plan's notice requirement for the missed visits, but would either fail to notify DFCS at all or call DFCS on the day of the visit. As with previous case plans, appellant was required to pay child support to DFCS, but failed to do so. She did, however, apply for SSI benefits in August 1996, although she did not seek full-time employment.
The fifth case plan was in effect from January until July 1997. This plan continued the goal of appellant being drug-free and required appellant to submit to one random drug screen per month. DFCS requested four drug tests, and appellant took one, which was negative. The plan also included as a goal that the children have contact with their parents and provided a schedule of supervised and unsupervised visits. With respect to the two daughters, appellant attended four of six unsupervised visits and six of eleven supervised visits. Appellant was not *743 present when J.L.T. had surgery on her thumb, telling Vineyard that she was too upset to go to the surgery because she would not be allowed to take J.L.T. home afterwards. Appellant attended all 12 scheduled visits with her son, J.M.T.
The case plan also included as a goal that appellant demonstrate emotional and mental stability. To achieve this goal, she was to attend psychotherapy sessions at Henry County Counseling Center as recommended by the therapist. Although the psychotherapist recommended weekly sessions, appellant attended only one session during the six-month plan period. The plan also required appellant to continue treatment by an agency-approved psychiatrist, but she did not do so. The case plan also continued the goal that the children's financial needs be met and required that appellant pay monthly child support as ordered by the court. However, the only child support paid was $300 from the father. Another case plan goal was that the family have sufficient income to meet living expenses. To meet this goal, the plan required appellant to follow up on her SSI application and seek full-time employment. Appellant apparently obtained employment for a brief period of time, although she did not provide verification of employment to DFCS as required by the plan.
The sixth case plan was in effect from July 1997 through January 1998. The first goal of this plan was that appellant be drug-free. DFCS requested that appellant take one drug test during this period, and the results were negative. The second goal was that the children have contact with their birth family, and the plan set forth a schedule of visitation. Appellant made six of twelve scheduled supervised visits with S.M.T. and nine of eleven scheduled visits with J.L.T. The plan also required that appellant have unsupervised visits with her two daughters, although this visitation was to be allowed only if appellant had (1) maintained a suitable residence for at least ninety days, (2) been in continuous family therapy for at least ninety days, and (3) been in continuous individual therapy for at least ninety days. Vineyard testified that no unsupervised visits were made because appellant did not satisfy the three conditions. Appellant was also to have scheduled visitation and family therapy with her son, J.M.T., every other weekend, but attended only four of eleven sessions. Vineyard testified that appellant did not contact DFCS 24 hours before a cancelled visit, as required by the plan.
A third goal was that appellant demonstrate emotional and mental stability. The plan required that appellant see a DFCS-approved psychotherapist and psychiatrist. Although appellant told Vineyard that she was going to therapy, she did not provide any verification of such therapy. Appellant paid no child support during the plan period as required. The plan required appellant to follow up on her SSI application and to seek-full-time employment. Appellant obtained employment at a Waffle House during this period and provided DFCS with verification of the employment.
The seventh case plan was in effect from January 1998 through the termination hearing in July 1998. As with previous plans, this plan required appellant to submit to random drug tests. Appellant took one of two requested tests, and the results of the test were negative. The plan also set forth a schedule of supervised visits with appellant's children. Vineyard testified that appellant attended four of twelve scheduled visits with J.L.T., five of seventeen scheduled visits with S.M.T., and four of seventeen scheduled visits with J.M.T. Appellant did not comply with a plan provision requiring her to notify DFCS 24 hours in advance if she had to miss a visit, but would usually call DFCS the day of the visit or afterwards. Appellant also failed to comply with the plan's requirements that she see a psychotherapist and psychiatrist. Appellant failed to pay child support as required. With respect to the plan's requirement that she seek full-time employment, appellant apparently obtained employment at a McDonald's for a brief time but was fired after her SSI application was approved.
Laura Walsh, a therapist at Methodist Home in Macon, testified that she had been the case manager for S.M.T. since she was admitted to Methodist Home in September 1997. She testified that she sees S.M.T. *744 daily, has individual therapy sessions with her three times a month, and has group therapy twice a week. She testified that she has observed recurring symptoms of major depression in S.M.T., including hypersomnia, crying, a wish to die, and a lack of self-esteem. She testified that S.M.T. also exhibited symptoms of post-traumatic stress disorder, including incidents in which she would drop into a fetal position and scream, "You are raping me, you are raping me, he hurt me." S.M.T. also told Walsh that "she has intrusive thoughts of sexual abuse and physical abuse in her home." Walsh testified that S.M.T. does well in school and can bond well with people"She wants to be in a family, in a family setting. And the prognosis for her is good in a family setting." She testified that S.M.T. was excited about the prospect of being placed in a therapeutic foster home.
Walsh testified that appellant had made only ten out of twenty-seven scheduled visits in the past year and only five out of twenty-one scheduled visits since January 1998.[2] She testified that "[o]ut of the sixteen she didn't make, we got three phone calls." Walsh said that,
[S.M.T.] deteriorates after these visits when mom doesn't show up to the point of pulling her hair, scratching herself, having to be restrained, asking us to kill her, destroying things in her room. Those are things that she does not do any other time in the past six months.
On one occasion, S.M.T. thought her mother was dead because she had not heard from her, and Walsh had to call appellant so she could speak to S.M.T. Walsh testified that she did not think it would be beneficial to S.M.T. for her relationship with appellant to continue as it had for the past year.
Sandra Gardner, a therapist at Methodist Home, testified that she had been involved in J.M.T.'s treatment since May 1996 and had seen him three times a week for individual and group therapy from January through August 1998. She testified that J.M.T. exhibits symptoms of disruptive behavior disorder, including problems with authority and following rules. She also testified that J.M.T. has characteristics of impulse control disorder and attention deficit hyperactivity disorder, as well as problems bonding with people. She testified that appellant continuously failed to show up for scheduled visits and family therapy sessions, and that J.M.T. was "retraumatized" when his mother would fail to show up. She believed that it would be difficult for him to make continued progress "if things continue with the inconsistency in visitation with his mother," and said that the relationship is "more harmful to him than it is beneficial."
Susan Waddell, the social services supervisor for DFCS, testified that J.L.T., who had no major behavioral problems, had lived with a foster family for almost two years and considered it to be her family. She testified that the foster parents had expressed an interest in adopting J.L.T.
1. The decision to terminate parental rights involves a two-step process:
First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability. This determination is based on a finding that the child is deprived, the lack of proper parental care or control by the parent is the cause of the child being deprived, the cause of deprivation is likely to continue or will not likely be remedied, and the continued deprivation will cause or is likely to cause serious harm to the child. Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, the court considers whether termination of parental rights is in the best interest of the child. On appeal, we determine whether, viewing the evidence in a light most favorable to the lower court's judgment, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.[3]
*745 With respect to the first element, the prior unappealed deprivation orders, of which the trial court took judicial notice, establish that the children are deprived.[4]
With respect to the second element, in determining whether there is an absence of proper parental care and control, the trial court is authorized to consider evidence of the parent's "mental ... or emotional neglect of the child."[5] In addition, where the child is not in the parent's custody, the trial court may consider
whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.[6]
In this case, there was evidence that appellant failed to comply with the terms of the reunification plans by, among other things, failing to attend counseling, failing to provide financial support, and, perhaps most importantly, failing to attend scheduled visitations with her children or to provide notice when she did not attend. With respect to J.M.T. and S.M.T., there was evidence that their mother's failure to show up when expected would cause them great emotional pain and aggravate their fragile emotional states. Although appellant claimed that her absences were due solely to transportation or health problems, the trial court clearly found such explanation lacking in credibility given the number of absences and the mother's repeated failure to give notice. Under the circumstances, we believe the trial court was authorized to conclude that the mother's failure to maintain contact with her children demonstrated an indifference to their welfare and a lack of proper parental care and control.[7]
With respect to the third element, the trial court was authorized to conclude that the cause of deprivation was likely to continue or would not likely be remedied. We have previously held that "[a]lthough past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue."[8] In this case, the court noted that appellant repeatedly failed to comply with the terms of the court-ordered reunification plans over a period of several years, in particular by failing to seek counseling and by failing to see her children, notwithstanding the fact that such conditions were repeatedly included in the plans. Appellant herself admits in her appellate brief that "as the case plans progressed, [her] participation with the goals and steps of each plan was diminished." Although appellant promised to cooperate in the future, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact."[9] The only arguments asserted by appellant in her brief on this issue are that she has lived in an adequate home for the past five months, that her claim for SSI benefits has been denied but is under appeal, and that she receives $75 per week alimony from her ex-husband. However, even assuming that appellant's material situation does not support termination, this does not address the emotional neglect of her children as evidenced by her repeated failure to comply with court-ordered visitation, notwithstanding the effect of such failure on the children.
With respect to the fourth element, whether continued deprivation is likely to *746 cause serious harm to the children, appellant makes no argument other than to assert that there was no expert evidence to that effect. However, there is no requirement that the likelihood of harm may be proved only by expert testimony. Moreover, with respect to S.M.T. and J.M.T., there was expert testimony regarding their mental problems and the effect of appellant's failure to maintain contact with them. With respect to J.L.T., there was evidence that she has bonded with the foster family with whom she has been living for nearly two years, that she considered them to be her real family, and that her foster parents desired to adopt her. "This evidence supports a finding that [J.L.T.] would suffer serious harm if returned to [appellant]."[10]
Appellant does not challenge the trial court's finding that termination of parental rights was in the best interest of the children. Moreover, we note that "[t]he same factors that support the finding of parental misconduct or inability can also support a finding that termination is in the children's best interest."[11] Accordingly, there was sufficient evidence to support the trial court's termination of appellant's parental rights.
2. During testimony regarding the fourth case plan, in effect from July 1996 to January 1997, Vineyard testified that appellant had cancelled most of the therapy sessions recommended by a DFCS-approved psychologist. Appellant contends that the trial court erred in admitting this evidence because it was based on records generated by Henry County Counseling Center and she was not able to cross-examine the person who prepared the record. Pretermitting whether this testimony, relating to a six-month period more than a year and a half before the termination hearing, constituted inadmissible hearsay, appellant has failed to show how admission of the testimony requires reversal. Appellant does not challenge the trial court's findings that she failed to obtain required counseling throughout the course of the various case plans and that she was not participating in counseling at the time of trial. Because appellant has failed to show that admission of the testimony in question constituted harmful error, this assertion of error is without merit.[12]
Judgment affirmed.
McMURRAY, P.J., and ANDREWS, P.J., concur.
NOTES
[1] The trial court took judicial notice of these orders, although they are not contained in the record on appeal.
[2] Walsh testified at the August 24, 1998 session of the termination hearing, while Vineyard testified at the July 20, 1998 session.
[3] (Citations omitted.) In the Interest of J.C., 237 Ga.App. 533-534, 515 S.E.2d 847 (1999). See OCGA § 15-11-81.
[4] See In Interest of J.M.W., 216 Ga.App. 166, 167, 453 S.E.2d 764 (1995).
[5] OCGA § 15-11-81(b)(4)(B)(v).
[6] OCGA § 15-11-81(b)(4)(C).
[7] See In the Interest of H.L.W., 229 Ga.App. 264, 266, 493 S.E.2d 637 (1997).
[8] (Punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 204(1)(c), 480 S.E.2d 243 (1997).
[9] (Punctuation omitted.) In the Interest of L.H., 236 Ga.App. 132, 136(1), 511 S.E.2d 253 (1999).
[10] In the Interest of A.C., 230 Ga.App. 395, 398(1), 496 S.E.2d 752 (1998).
[11] (Punctuation omitted.) In the Interest of J.B.A., 232 Ga.App. 345, 350, 501 S.E.2d 862 (1998).
[12] See In the Interest of V.S., 230 Ga.App. 26, 31(2), 495 S.E.2d 142 (1997) (error must be harmful to be reversible).