539 S.E.2d 584 (2000)
246 Ga. App. 85
In the Interest of A.G.I., a child.
No. A00A1263.
Court of Appeals of Georgia.
September 21, 2000.
*585 Amelia G. Pray, Austell, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, Sanders B. Deen, Scott P. Semrau, for appellee.
JOHNSON, Chief Judge.
Nicole Irvin was placed on parole by the Department of Juvenile Justice in 1996. In December 1998, 17-year-old Irvin was recommitted to the Department because she had committed another offense, apparently a criminal trespass involving a vehicle. Irvin was pregnant, so the Department allowed her to return to her home, but eventually placed her in a maternity group home. Irvin ran away from the home, but two weeks later she was apprehended and placed in a youth detention center.
In June 1999, while still in custody, Irvin gave birth to A.G.I., who was placed in a foster home. In July of that year, the Department of Family & Children Services (DFCS) filed a petition to terminate the parental rights of Irvin and the child's father. In August, the juvenile court issued an order finding that A.G.I. was deprived because Irvin was in custody, Irvin was not mature enough to provide for the child, and the father's whereabouts were unknown. The court further ordered that A.G.I. be placed in the temporary custody of DFCS.
In September 1999, a final hearing on the petition to terminate Irvin's parental rights was held, while the hearing on the father's rights was continued until November. Irvin, who was still in custody, was taken to the courthouse, but she refused to leave the *586 court's holding cell to participate in the hearing. Irvin's attorney moved for a continuance, but the court denied the motion, and the hearing proceeded without Irvin's presence.
At the hearing, DFCS presented two witnesses. A parole officer testified about Irvin's recommitment to the Department of Juvenile Justice in 1998 due to the trespass offense, her running away from the maternity home, her placement in the detention center, her refusal to see a doctor, her hurting her finger in a fight while in detention, her probable release from the detention center four months after the hearing, and the possibility that Irvin could be placed in an independent living and job corps program upon her release.
A DFCS caseworker then testified that while A.G.I. had been in the custody of DFCS, Irvin had seen the child one time and had provided no financial support for the child. The caseworker also testified that Irvin has another child, who lives with Irvin's mother, but that Irvin's mother is unable to care for A.G.I. The caseworker stated that she is unaware of any job skills which Irvin might have, and she opined that Irvin is unable to raise A.G.I. The caseworker admitted, however, that she had never actually spoken to Irvin.
Finally, the guardian ad litem did not testify, but made a brief statement to the court. He said that Irvin had had little opportunity to prove her dedication to the three-and-a-half-month-old child because she had been in custody. Nevertheless, he recommended that Irvin's parental rights be terminated based on her poor past conduct, her conduct in the detention center, her failure to strive to improve her situation, her lack of education, and her inability to communicate effectively. The guardian did not elaborate on or provide details about any of these bases for his recommendation of termination.
The court then announced its decision that Irvin's parental rights were terminated. The court's final order terminating her parental rights was issued several days later.
Irvin appeals from the termination order, asserting that the court erred in holding the termination hearing without her presence in the courtroom and that there is insufficient evidence to support the court's order. Because Irvin waived her right to be present during the hearing by refusing to enter the courtroom, the court did not err in holding the hearing in Irvin's absence. However, the court did err in terminating Irvin's parental rights based on the insufficient evidence offered by DFCS. The order of the juvenile court must therefore be reversed.
1. A party may waive the right to be present during trial proceedings by voluntarily absenting herself from the court.[1] In this case, Irvin's own lawyer, as well as two deputy sheriffs, told the court that Irvin was fully informed that the hearing was going to be held, but she refused to enter the courtroom. Under such circumstances, the court did not err in concluding that Irvin waived the right to be present during the hearing.[2]
2. No judicial determination has more drastic significance than that of severing a parent-child relationship.[3] Such a determination must be exercised cautiously and scrutinized deliberately.[4] A court may therefore terminate parental rights only where there is clear and convincing evidence of parental misconduct or inability.[5] The court determines parental misconduct or inability by finding that (1) the child is deprived, (2) the lack of parental care or control is the cause of the deprivation, (3) such lack of care or control is likely to continue, and (4) the *587 continued deprivation is likely to harm the child.[6]
In the instant case, the initial court order finding A.G.I. to be deprived was never appealed. So, at the later termination hearing the juvenile court was authorized to take judicial notice of that order and find that A.G.I. was deprived.[7]
Even though the court did not err in finding A.G.I. to be deprived, the court did err in ruling that there was clear and convincing evidence of the other factors needed to find parental misconduct or inability. In determining if the child lacks parental care or control, the court shall consider various factors established by OCGA § 15-11-94(b)(4)(B) and (C). In this case, there is no evidence of any of these factors.
In fact, in its final order, the juvenile court expressly, and correctly, found no evidence of excessive drug or alcohol use by Irvin, no evidence that she has a felony conviction, no evidence of egregious physical or emotional abuse of A.G.I. or any other child by Irvin, no evidence of injury to or death of a sibling of A.G.I. due to parental neglect, no evidence that Irvin failed to comply with a court order requiring child support, and no evidence that she failed to comply with a court-ordered plan to reunite her with A.G.I.
But the court incorrectly determined that there is a lack of parental care or control by finding that Irvin has been diagnosed with oppositional defiant behavior, that she is immature and lacks the skills to care for or support A.G.I., that Irvin's other child is being raised by Irvin's mother, that she failed to attend prenatal doctor appointments and ran away from the maternity group home, and that she has failed to bond with the child. While DFCS may have presented slight evidence to support some of these findings, none of the findings support a conclusion that there is clear and convincing evidence of parental misconduct or inability.
a. Oppositional defiant behavior. In finding that Irvin has been diagnosed with oppositional defiant behavior, the court cited the initial deprivation order, which stated that there was such a diagnosis. But neither that initial order nor the two witnesses who testified at the termination hearing explained the meaning of that diagnosis. The record is devoid of any evidence describing what the behavior is or how it might limit Irvin's parental abilities. So even though there may have been such a diagnosis, there is no evidence of a medically verifiable mental or emotional deficiency that renders Irvin unable to provide for the needs of her child.[8]
b. Immaturity and lack of skills. While Irvin may be immature and lack the skills to care for and support A.G.I., there was no evidence introduced at the hearing to support such findings. Neither witness testified that Irvin is immature. And there was no evidence that her purported immaturity rises to the level of being a medically verifiable emotional deficiency rendering her incapable of providing for A.G.I.[9]
The caseworker concluded that Irvin lacks job skills and the ability to raise the child. But she provided no basis for her conclusions, and then immediately conceded on cross-examination that she had never actually spoken with Irvin. Her unsubstantiated conclusions are not clear and convincing evidence of parental inability.
c. Other child in grandmother's care. The mere fact that Irvin's other child is being cared for by Irvin's mother does not prove that Irvin is an unfit parent. In its appellate brief, DFCS claims that Irvin's mother is raising the child because Irvin did not properly care for the child and abandoned her. First of all, we note that in its final order the court made no such findings that Irvin had failed to care for or abandoned the other child.
Secondly, while evidence concerning Irvin's treatment of her other child certainly would have been relevant, there was no such testimony presented at the termination hearing. So instead of testimony, DFCS supports its claim on appeal by citing the guardian ad litem's written report. The guardian, however, did not testify at the hearing, his report was not entered into evidence, and the portion *588 of the report relied on by DFCS contains hearsay statements purportedly made by Irvin's mother to the guardian. Thus, even if we assume that the juvenile court considered the guardian's report, any reliance on hearsay in the report would have been error.[10]
d. Failure to see doctor and leaving group home. Although the parole officer testified that Irvin did not attend doctor appointments and ran away from the maternity group home, she did not explain the circumstances surrounding those incidents and made no showing that the missed appointments or the running away harmed A.G.I. The mere facts that doctor appointments were missed and that Irvin ran away do not support the court's conclusion that she neglected A.G.I.[11]
e. Failure to bond. The finding that Irvin has failed to bond with A.G.I., while undoubtedly correct, is not an appropriate ground in this case to find parental misconduct or inability. At the time of the hearing Irvin had not had a chance to bond with A.G.I. because she had been incarcerated since before the child was born. The juvenile court even stated at the conclusion of the termination hearing that it was not basing its ruling on Irvin's incarceration because Irvin obviously could not visit or support the child while in custody.
Based on the brief and insubstantial testimony given by the parole officer and the caseworker, there is not clear and convincing evidence of parental misconduct or inability. Absent such evidence, the juvenile court erred in taking the drastic action of terminating Irvin's parental rights.[12] The order of termination is thus reversed.[13]
Judgment reversed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] In the Interest of B.G., 225 Ga.App. 492, 493-494(1), 484 S.E.2d 293 (1997); Winfield v. State, 210 Ga.App. 849, 850-851(1), 437 S.E.2d 849 (1993).
[2] See In the Interest of F.L.S., 232 Ga.App. 100, 101, 502 S.E.2d 256 (1998); In the Interest of M.G.F., 222 Ga.App. 816, 818, 476 S.E.2d 100 (1996).
[3] In the Interest of R.A., 226 Ga.App. 18, 20, 486 S.E.2d 363 (1997).
[4] In the Interest of K.M., 240 Ga.App. 677, 679-680, 523 S.E.2d 640 (1999).
[5] OCGA § 15-11-94(a).
[6] OCGA § 15-11-94(b)(4)(A).
[7] See In the Interest of J.L.T., 241 Ga.App. 464, 469(1), 524 S.E.2d 740 (1999).
[8] See OCGA § 15-11-94(b)(4)(B)(i).
[9] See id.
[10] See In the Interest of M.A.C., 244 Ga. 645, 655(4), 261 S.E.2d 590 (1979); In the Interest of J.C., 242 Ga. 737, 740-741(3), 251 S.E.2d 299 (1978).
[11] See OCGA § 15-11-94(b)(4)(B)(v).
[12] See In the Interest of K.M., supra; In the Interest of R.A., supra.
[13] See In the Interest of K.J., 226 Ga.App. 303, 486 S.E.2d 899 (1997).